676 S.E.2d 320

Kevin GISSEL and Christina Gissel (Formerly Christina Eckley), Petitioners,

v.

Charles HART and Gene Hart, Respondents.

Wade A. McEachern, Petitioner,

v.

Charles Hart and Gene Hart, Respondents.

No. 26639.

Supreme Court of South Carolina.

Heard Feb. 18, 2009.

Decided April 20, 2009.

Donald H. Howe, of Howe and Wyndham, and Walter Bilbro, Jr., both of Charleston, for Petitioner.

Steven L. Smith, of Smith & Koontz, of North Charleston, for Respondents.

Justice WALLER:

We granted a writ of certiorari to review the Court of Appeals' opinion in *Gissel v. Hart*, 373 S.C. 281, 644 S.E.2d 772 (Ct.App.2007). We reverse.

## FACTS

In the summer of 2003, Petitioners, the Gissels and McEachern, filed separate complaints against Homes America Inc., Southern Showcase Housing, Inc, Charles Hart, Gene Hart, and Amery English.[1] The complaints alleged Charles Hart

---

1. Homes America was merged into Southern Showcase Homes, Inc in April 2000. English was apparently employed by Homes America. The

and Gene Hart were agents, servants, and employees of Homes America, Inc, and that Homes America had sold them both mobile homes in early 2001.[2] Petitioners alleged they were advised by the Harts that they could finance land/home packages with concrete footings included in the purchase price. However, upon delivery, the mobile homes were improperly installed and had numerous deficiencies which were never remedied. The complaints alleged causes of action for negligence, fraud, and breach of contract with fraudulent intent against Homes America, Southern Showcase Housing, Charles Hart, Gene Hart, and Amery English. Each of the complaints alleged the deficiencies were the result of the negligence and recklessness of the defendants "jointly, severally or in the alternative." The complaints sought actual and punitive damages.

Southern Homes moved to dismiss the complaint and refer the matter to arbitration as required by the parties' contract. Thereafter, Charles Hart and Gene Hart, who were individually named in the complaints, filed a separate motion to dismiss and moved to refer the matter to arbitration.

By orders dated January 13, 2004, the motions to compel arbitration were granted. Judge Jefferson found the contract's arbitration provision, which was contained on the top of the first page of the contract (Form 500) in bold type, underlined capital letters, binding. It states:

*NOTICE OF ARBITRATION PROVISION: THIS CONTRACT CONTAINS A BINDING AGREEMENT TO ARBRITRATE ALL CLAIMS, DISPUTES AND CONTROVERSIES ARISING OUT OF OR IN CONNECTION WITH THIS CONTRACT.*

After an arbitration hearing, Southern Homes settled with the Gissels and McEachern, leaving the Harts as sole defendants. The arbitrator then entered awards in favor of the Gissels and McEachern against the Harts. The Gissels were awarded $55,000.00 actual, consequential and incidental dam-

complaints do not list specific allegations against English, and he was not a party to this appeal.

2. The Gissels contracted to purchase a mobile home for $73,919.00; McEachern's contract price was $76,855.00.

ages against Charles Hart and Gene Hart, jointly and severally; they were awarded $45,000.00 punitive damages against Charles Hart, individually, and $45,000.00 punitive damages against Gene Hart individually. McEachern was awarded $53,000.00 actual, consequential and incidental damages against Charles Hart and Gene Hart, jointly and severally, and $45,000.00 punitive damages against Charles Hart, individually, and $45,000.00 punitive damages against Gene Hart individually.

The Harts appealed to the circuit court and moved to vacate the arbitrator's award, contending there was no evidence presented to the arbitrator that they had acted outside the scope of their employment for Homes America. The circuit court denied the Hart's motion to vacate and confirmed the arbitrator's award.

The Court of Appeals vacated the arbitrator's award against the Harts; it found the complaints did not clearly assert claims against the Harts in their individual capacities, such that there was no basis on which to predicate an award of punitive damages. The Court affirmed the awards to the extent they imposed damages against the Harts in their representative capacities as agents, servants and employees of Homes America. The Court of Appeals denied rehearing, and this Court granted certiorari.

## ISSUE

Did the Court of Appeals err in ruling there was no basis upon which to impose individual liability against the Harts?

## SCOPE OF REVIEW

The determination of whether a claim is subject to arbitration is subject to *de novo* review. Nevertheless, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings. *Aiken v. World Finance Corp. of South Carolina*, 373 S.C. 144, 644 S.E.2d 705 (2007).

## DISCUSSION

Arbitration is a favored method of settling disputes in South Carolina. Unless a court can say with positive

assurance that an arbitration clause is not susceptible to any interpretation that covers the dispute, arbitration should generally be ordered. *Aiken v. World Finance Corp., infra; Zabinski v. Bright Acres Assocs.,* 346 S.C. 580, 596–97, 553 S.E.2d 110, 118–19 (2001). However, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *Id.* at 596, 553 S.E.2d at 118. Courts generally hold broadly-worded arbitration agreements apply to disputes in which a "significant relationship" exists between the asserted claims and the contract in which the arbitration clause is contained. *Id.* at 598, 553 S.E.2d at 119 (quoting *Long v. Silver,* 248 F.3d 309 (4th Cir.2001)).

■■■ When a dispute is submitted to arbitration, the arbitrator determines questions of both law and fact. Generally, an arbitration award is conclusive and courts will refuse to review the merits of an award. An award will be vacated only under narrow, limited circumstances. *Pittman Mortgage Co. v. Edwards,* 327 S.C. 72, 75–76, 488 S.E.2d 335, 337 (1997). An arbitrator's award may be vacated when the arbitrator exceeds his or her powers and/or manifestly disregards or perversely misconstrues the law. *Technical College v. Lucas and Stubbs,* 286 S.C. 98, 333 S.E.2d 781 (1985); S.C.Code Ann. § 15–48–130(a).

■■■ However, for a court to vacate an arbitration award based upon an arbitrator's manifest disregard of the law, the governing law ignored by the arbitrator must be well defined, explicit, and clearly applicable. *Id.; Trident Technical College v. Lucas and Stubbs,* 286 S.C. 98, 333 S.E.2d 781 (1985). Case law presupposes something beyond a mere error in construing or applying the law. Even a "clearly erroneous interpretation of the contract" cannot be disturbed. *Id.* at 108, 333 S.E.2d at 787. The focus is on the conduct of the arbitrator and **presupposes something beyond a mere error in construing or applying the law.** *Id.* at 108, 333 S.E.2d at 787. (Emphasis supplied). *Accord Harris v. Bennett,* 332 S.C. 238, 503 S.E.2d 782 (Ct.App.1998). An arbitrator's "manifest disregard of the law," as a basis for vacating an arbitration award occurs when the arbitrator knew of a governing legal principle yet refused to apply it. *Weimer v. Jones,* 364

S.C. 78, 610 S.E.2d 850 (Ct.App.2005). Factual and legal errors by arbitrators do not constitute an abuse of powers, and a court is not required to review the merits of a decision so long as the arbitrators do not exceed their powers. *Pittman, supra.*

■ Here, the Court of Appeals recognized the four statutory grounds on which an arbitrator's award may be vacated, to wit:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C.A. § 10(a)(1)-(4) (West Supp.2006).[3]

The Court of Appeals did not rule specifically on any of the above grounds, but noted the Harts' argument that the arbitrator exceeded his powers inasmuch as there was no basis for an award of damages against them individually. The Court of Appeals then looked to the allegations of the **complaint** in order to determine whether the award was proper. This was error.

The Harts effectively concede an arbitrator **may** apportion punitive damages between joint tortfeasors citing D.E. Ytreberg, *Apportionment of punitive or exemplary damages as between joint tortfeasors* 20 A.L.R.3d 666 (1968) (indicating that a majority of jurisdictions permit apportionment of such damages). However, the Harts nonetheless contend it was proper for the Court of Appeals to review the factual basis of the complaint to determine whether they were, in fact, individual parties to the action. We disagree.

---

3. S.C.Code Ann. § 15–48–130(a) sets forth similar state grounds.

The complaint is irrelevant to the determination of whether or not the arbitrator manifestly disregarded the law. What is dispositive is the fact that the Harts specifically filed their own motion to dismiss and moved to have the matter sent to arbitration. They clearly did not dispute that they were named as defendants, and they did not contend they should be dismissed as parties at that time. They should not now be permitted to complain on appeal. *Erickson v. Jones St. Publishers, LLC,* 368 S.C. 444, 476, 629 S.E.2d 653, 670 (2006) (party may not complain on appeal of error which his own conduct induced).

Moreover, in holding the Harts were not individually sued as parties, the Court of Appeals cited cases concerning whether defendants were sued in their individual, rather than **official** capacities. The cited cases, however, deal with claims against **state** agencies, counties, school boards, etc., and involve public official immunity under state tort claims acts. *See e.g., Urquhart v. Univ. Health Sys. of E. Carolina, Inc.,* 151 N.C.App. 590, 566 S.E.2d 143, 145 (2002); *Paquette v. County of Durham,* 155 N.C.App. 415, 573 S.E.2d 715, 719 (2002); *McKagen v. Windham,* 59 S.C. 434, 38 S.E. 2 (1901).

The present case, however, does not involve tort claims immunity. Even if the Harts were acting as agents of Homes America, there is nothing preventing them from being held independently liable for torts committed in the scope of their employment. *Cf. Dickert v. Metropolitan Life Ins.,* 311 S.C. 218, 428 S.E.2d 700 (1993) (co-employee may be held individually liable for intentional tort committed while acting within the scope of employment).

Moreover, the complaints here specifically named the Harts as individual defendants, and alleged they were jointly and severally liable, or liable in the alternative. It is clear that the Harts were named as individual defendants, and the Court of Appeals erred in looking to the complaint to determine otherwise. The Court of Appeals' opinion is reversed and the arbitrator's award is reinstated.

**REVERSED.**

TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.